UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ENTERPRISE FM TRUST,            )
                                )
    Plaintiff,                  )
v.                              )     2:19-cv-00358-GZS
                                )
GLOBAL ENVIRONMENTAL            )
SOLUTIONS, INC.,                )
                                )
    Defendant                   )

# RECOMMENDED DECISION ON MOTION FOR ENTRY OF DEFAULT JUDGMENT

When Defendant did not respond to Plaintiff's complaint in this matter, upon Plaintiff's request, the Court entered a default against Defendant on Plaintiff's complaint. (Order, ECF No. 8.) Plaintiff subsequently filed a Motion for Entry of Default Judgment. (Motion, ECF No. 10.)[1] Through the motion, Plaintiff asks the Court for the entry of a judgment in the amount of $505,354.84 in damages, charges and interest, an award of $57,576.50 in attorneys' fees, and an order directing Defendant to return vehicles it leased from Plaintiff.

Following a review of the record and after consideration of Plaintiff's motion, I recommend the Court grant the motion and enter judgment against Defendant.

## FACTUAL BACKGROUND

With the entry of default against Defendant, Plaintiff's allegations against

---

[1] Plaintiff also filed a Motion to Appoint a Receiver. (ECF No. 11.) I address that motion in a separate order.

Defendant are "taken as true and … considered established as a matter of law." *Libertad v. Sanchez*, 215 F.3d 206, 208 (1st Cir. 2000) (quoting *Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 13 (1st Cir. 1985)); *see also In re Home Rests., Inc.*, 285 F.3d 111, 114 (1st Cir. 2002) (a party "who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability ….").

Plaintiff and Defendant entered into a Master Equity Lease Agreement effective December 6, 2012 (the Agreement). (Complaint ¶ 6, ECF No. 1.)[2] Under the Agreement, Defendant leased vehicles from Plaintiff. (*Id.* ¶ 7.) Defendant was obligated to pay rent for the vehicles. (*Id.* ¶ 9.) On or about April 23, 2019, Defendant's April rent check was returned for insufficient funds. (*Id.* ¶ 10.) Defendant failed to remedy the missed rent payment within ten days, as required by the Agreement, and thus defaulted under the terms of the Agreement. (*Id.* ¶¶ 11, 14.) Defendant has not paid rent on the vehicles since March 2019. (Declaration of Bryan Jurich ¶ 9, ECF No. 10-2.)

The Agreement provides that in the event of Defendant's default, Plaintiff is entitled to terminate the Agreement and demand the return of the vehicles. (Complaint ¶ 16.) On May 7, 2019, Plaintiff terminated the Agreement and demanded the return of the vehicles. (*Id.* ¶ 17.)[3] Upon such demand, the terms of the Agreement required Defendant to return the vehicles to Plaintiff immediately. (*Id.* ¶ 16.) Defendant returned

---

[2] A copy of the Agreement is attached to the complaint as Exhibit 1. (ECF No. 1-1.)

[3] A copy of the May 7, 2019 letter is attached to the complaint as Exhibit 3. (ECF No. 1-3.)

some of the leased vehicles to Plaintiff; seventeen vehicles remain unreturned. (Declaration of B. Jurich ¶ 8).

The Agreement provides Plaintiff with the following remedies upon default:

> 14. DEFAULT; REMEDIES: . . . Upon the occurrence of any Event of Default, Lessor, without notice to Lessee, will have the right to exercise concurrently or separately (and without any election of remedies being deemed made), the following remedies: (a) Lessor may demand and receive immediate possession of any or all of the Vehicles from Lessee, without releasing Lessee from its obligations under this Agreement; if Lessee fails to surrender possession of the Vehicles to Lessor on default (or termination or expiration of the Term), Lessor, Servicer, any other agent of Lessor and any of Lessor's independent contractors shall have the right to enter upon any premises where the Vehicles may be located and to remove and repossess the Vehicles; (b) Lessor may enforce performance by Lessee of its obligations under this Agreement; (c) Lessor may recover damages and expenses sustained by Lessor, Servicer, any other agent of Lessor or any of their respective successors or assigns by reason of Lessee's default including, to the extent permitted by applicable law, all costs and expenses, including court costs and reasonable attorneys' fees and expenses, incurred by Lessor, Servicer, any other agent of Lessor or any of their respective successors or assigns in attempting or effecting enforcement of Lessor's rights under this Agreement (whether or not litigation is commenced) and/or in connection with bankruptcy or solvency proceedings; (d) upon written notice to Lessee, Lessor may terminate Lessee's rights under this Agreement; (e) with respect to each Vehicle, Lessor may recover from Lessee all amounts owed by Lessee under Sections 3(b) and 3(c) of this Agreement (and, if Lessor does not recover possession of a Vehicle, (i) the estimated wholesale value of such Vehicle for purposes of Section 3(c) shall be deemed to be $0.00 and (ii) the calculations described in the first two sentences of Section 3(c) shall be made without giving effect to clause (ii) in each such sentence); and/or (f) Lessor may exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code, any other applicable law or in equity. A termination of this Agreement shall occur only upon written notice by Lessor to Lessee. Any termination shall not affect Lessee's obligation to pay all amounts due for periods prior to the effective date of such termination of Lessee's obligation to pay any indemnities under this Agreement. All remedies of Lessor under this Agreement or at law or in equity are cumulative.

(Exhibit 1 to Complaint at 4-5, ECF No. 1-1.)

## DISCUSSION

As noted above, upon entry of default, the defaulted party concedes the well-pleaded facts in the complaint. *See Quirindongo Pacheco v. Rolon Morales*, 953 F.2d 15, 16 (1st Cir. 1992). Where, as here, the facts state an actionable claim, the defendant's liability is established at the time of default. *See Hooper-Haas v. Ziegler Holdings*, LLC, 690 F.3d 34, 41 (1st Cir. 2012); *Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 13 (1st Cir. 1985).[4] A defendant's default, however, does not establish the amount of damages owed to the plaintiff for purposes of default judgment. Pursuant to Federal Rule of Civil Procedure 55(b)(2), a plaintiff seeking default judgment "must apply to the court" whenever the amount of damages claimed is not a "sum certain." "Unless a claim is for a 'sum certain' a court must consider proof of damages before entering final judgment." *CSXT Intermodal, Inc. v. Mercury Cartage*, LLC, 271 F.R.D. 400, 401 (D. Me. 2010).

Federal Rule of Civil Procedure 55(b)(2) provides in relevant part that a "court may

---

[4] Plaintiff also has satisfied the requirement that Defendant has not "appeared" in this matter for the entry of default judgment within the meaning of Fed. R. Civ. P. 55(b)(2), as interpreted by the First Circuit in *Key Bank of Me. v. Tablecloth Textile Co. Corp.*, 74 F.3d 349 (1st Cir. 1996). In *Key Bank*, the First Circuit stated that "although appearance in an action typically involves some presentation or submission to the court—a feature missing here—we have held that a defaulting party 'has appeared' for Rule 55 purposes if it has 'indicated to the moving party a clear purpose to defend the suit.'" 74 F.3d at 353. "Notice is required if there were any 'informal contacts' between the parties that demonstrate 'a clear intent to defend.'" *Katahdin Paper Co., LLC v. U & R Sys, Inc*., 231 F.R.D. 110, 112-12 (D. Me. 2005) (quoting *Key Bank*, 74 F.3d at 353). Here, Plaintiff filed a declaration from one of its employees who acted as the main point of contact with Defendant in attempting to recover the vehicles and sums alleged due in this dispute. (ECF No. 10-2, ¶ 5.) The employee states that no one employed by Defendant ever expressed to him an intent to defend the present suit. (*Id*. at ¶ 6.) Plaintiff's counsel also provided a declaration stating that, following Defendant's waiver of service, she contacted the office of the attorney who signed the waiver on Defendant's behalf. (ECF No. 10-5, ¶¶ 5-8.) Counsel was informed that the attorney who accepts service on behalf of Defendant does not represent Defendant in this lawsuit. (*Id*. at ¶¶ 8, 10.) Plaintiff's counsel was referred to another attorney, who also informed her that he does not represent Defendant in this matter. (*Id*. at ¶ 9.)

conduct hearings …. when, to enter or effectuate judgment, it needs to … determine het amount of damages. Fed. R. Civ. P. 55(b)(2)(B). Plaintiff maintains the Court can enter default judgment without a hearing because the damages can be determined with certainty based on the current record.

In support of its claim for damages, Plaintiff submitted the sworn declaration of Bryan Jurich, an Assistant Vice President for Enterprise Fleet Management, who, with the assistance of other individuals employed by Plaintiff, calculated the rent and other amounts owed by Defendant. (Declaration of B. Jurich ¶ 4.) Referencing the applicable terms of the parties' agreement, Mr. Jurich asserts that Defendant owes $505,354.84 to Plaintiff in rental fees and interest on the arrears. (*Id*. ¶ 16.) The damages are itemized as follows: $120,382.38 in past due rent and fees (*Id*. ¶ 11 & ECF No. 10-3); $73,042.04 in additional rent (ECF No. 10-2 ¶ 12 & ECF No. 10-4);[5] $5,539.49 in lease interest on the unreturned vehicles (ECF No. 10-2 ¶ 13 & ECF No. 10-4);[6] service charges totaling $6,715.00 (ECF

---

[5] The additional rent is owed pursuant to Section 4 of the Agreement, which requires Defendant to pay twice the daily-prorated rent for any vehicle it fails to return upon termination of the Agreement:

> USE AND SURRENDER OF VEHICLES: . . . At the expiration or earlier termination of this Agreement with respect to each Vehicle, or upon demand by Lessor made pursuant to Section 14, Lessee at its risk and expense agrees to return such Vehicle to Lessor at such place and by such reasonable means as may be designated by Lessor. If for any reason Lessee fails to return any Vehicle to Lessor as and when required in accordance with this Section, Lessee agrees to pay Lessor additional rent for such Vehicle at twice the normal pro-rated daily rent. Acceptance of such additional rent by Lessor will in no way limit Lessor's remedies with respect to Lessee's failure to return any Vehicle as required hereunder.

(Exhibit 1 to Complaint, ECF No. 1-1.)

[6] Mr. Jurich recalculated the interest due according to the "Rule of 78's," a method of calculating interest that gives added weight to months earlier in the cycle of a loan or lease. This recalculation method is specified in Section 3(b) of the Agreement:

No. 10-2 ¶ 15 & ECF No. 10-4);[7] $257,949.38 in other rent, described as the "Reduced Book Value" or "RBV," with respect to the unreturned vehicles (ECF No. 10-2 ¶ 14 &

---

In the event the Terms for any Vehicle ends prior to the last day of the scheduled Term, whether as a result of a default by Lessee, a Casualty Occurrence or any other reason, the rentals and management fees paid by Lessee will be recalculated in accordance with the rule of 78's and the adjusted amount will be payable by Lessee to Lessor on the termination date.

(Exhibit 1 to Complaint, ECF No. 1-1.)

[7] With respect to the service charges, and rent in general, the Agreement provides in Section 3(a):

Lessee agrees to pay Lessor monthly rental and other payments according to the Schedules and this Agreement. The monthly payments will be in the amount listed as the "Total Monthly Rental Including Additional Services" on the applicable Schedule (with any portion of such amount identified as a charge for maintenance services under Section 4 of the applicable Schedule being payable to Lessor as agent for Enterprise Fleet Management, Inc.) and will be due and payable in advance on the first day of each month. If a Vehicle is delivered to Lessee on any day other than the first day of a month, monthly rental payments will begin on the first day of the next month. In addition to the monthly rental payments, Lessee agrees to pay Lessor a pro-rated rental charge for the number of days that the Delivery Date precedes the first monthly rental payment date. A portion of each monthly rental payment being the amount designated as "Depreciation Reserve" on the applicable Schedule, will be considered as a reserve for depreciation and will be credited against the Delivered Price of the Vehicle for purposes of computing the Book Value of the Vehicle under Section 3(c). Lessee agrees to pay Lessor the "Total Initial Charges" set forth in each Schedule on the due date of the first monthly rental payment under such Schedule. Lessee agrees to pay Lessor the "Service Charge Due at Lease Termination" set forth in each Schedule at the end of the applicable Term (whether by reason of expiration, early termination or otherwise).

(Exhibit 1 to Complaint, ECF No. 1-1.)

ECF No. 10-4);[8] and $41,726.55 in per annum interest on the missed rental payments.[9]

Two supporting documents are attached to the declaration: an Accounts Receivable

---

[8] Reduced Book Value is to be calculated under Section 3(c) of the Agreement as follows:

> Lessee agrees to pay Lessor within thirty (30) days after the end of the Term for each Vehicle, additional rent equal to the excess, if any, of the Book Value of such Vehicle over the greater of (i) the wholesale value of such Vehicle as determined by Lessor in good faith or (ii) except as provided below, twenty percent (20%) of the Delivered Price of such Vehicle as set forth in the applicable Schedule. If the Book Value of such Vehicle is less than the greater of (i) the wholesale value of such Vehicle as determined by Lessor in good faith (ii) except as provided below, twenty percent (20%) of the Delivered Price of such Vehicle as set forth in the applicable Schedule, Lessor agrees to pay such deficiency to Lessee as a terminal rental adjustment within thirty (30) days after the end of the applicable Term. Notwithstanding the foregoing, if (i) the Term for a Vehicle is greater than forty-eight (48) months (including any extension of the Term for such Vehicle), (ii) the mileage on a Vehicle at the end of the Term is greater than 15,000 miles per year on average (prorated on a daily basis) (i.e., if the mileage on a Vehicle with a Term of thirty-six (36) months is greater than 45,000 miles) or (iii) in the sole judgment of Lessor, a Vehicle has been subject to damage or any abnormal or excessive wear and tear, the calculations described in the two immediately preceding sentences shall be made without giving effect to clause (ii) in each such sentence. The "Book Value" of a Vehicle means the sum of (i) the "Delivered Price") of the Vehicle as set forth in the applicable Schedule minus (ii) the total Depreciation Reserve paid by Lessee to Lessor with respect to such Vehicle plus (iii) all accrued and unpaid rent and/or other amounts owed by Lessee with respect to such Vehicle.

(ECF No. 1-1.) Section 14 of the Agreement further provides:

> if Lessor does not recover possession of a Vehicle, (i) the estimated wholesale value of such Vehicle for purposes of Section 3(c) shall be deemed to be $0.00 and (ii) the calculations described in the first two sentences of Section 3(c) shall be made without giving effect to clause (ii) in each such sentence….

(*Id.*)

[9] The Agreement provides that it is governed by and is to be construed in accordance with the substantive law of the State of Missouri. (ECF No. 1-1, ¶ 17.) Interest totaling $41,726.55 on the amounts alleged due was calculated at 9% per annum (ECF No. 10-2, ¶ 16), which is the highest rate permitted under § 408.040 Mo. Ann. Stat. This interest rate is prescribed by the Agreement at Section 3(e):

> Any rental payment or other amount owed by Lessee to Lessor which is not paid within twenty (20) days after its due date will accrue interest, payable on demand of Lessor, from the date due until paid in full at a rate per annum equal to the lessor of (i) Eighteen Percent (18%) per annum or (ii) the highest rate permitted by applicable law (the "Default Rate").

(ECF No. 1-1.)

Summary (ECF No. 10-3) and a Payoff Values Summary (ECF No. 10-4).

The evidence submitted by Plaintiff provides a record from which the Court can reasonably determine, without a hearing, the amount of money damages recoverable by Plaintiff as the result of Defendant's breach of the Agreement. Given the entry of default, Plaintiff has established that Defendant has not made the rental payments as required by the Agreement and has not returned all the leased vehicles upon Plaintiff's request. Plaintiff, therefore, is entitled to recover the monetary amount due in the event Defendant defaults on its obligations under the Agreement. In his calculation of the amount due, Mr. Jurich cites the relevant provisions of the Agreement and given the default, his calculations are uncontroverted on the record. Mr. Jurich's calculations, therefore, represent the amounts Defendant owes Plaintiff as the result of Defendant's breach of the Agreement. Finally, the record establishes that Defendant has not returned seventeen of the leased vehicles as required by the Agreement. Plaintiff's request for the return of the vehicles is thus reasonable and supported by the record.[10]

## CONCLUSION

Based on the foregoing analysis, I recommend the Court enter judgment in favor of Plaintiff in the amount of $505,354.84, together with interest and costs.[11] I also

---

[10] Equitable relief is available without a hearing on a default judgment. *See, e.g., Scarcelli v. Gleichman*, 2012 WL 1965681 (D. Me. May 31, 2012); *BMG Music v. Marsters*, 616 F.Supp.2d 151, 155 (D. Me. 2006).

[11] Although Section 14 of the Agreement provides that Plaintiff may recover its reasonable attorney fees in the event of a default under the Agreement, I have not included an award of attorney fees as requested. I recommend the Court require Plaintiff to submit a separate application for fees, with supporting documentation and authority, in accordance with District of Maine Local Rule 54.2.

recommend the Court order Defendant to return the leased vehicles that have not been returned to Plaintiff.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 31st day of December, 2019.